# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

KAVYA NAGARAJ
55 36 Lake Lindero Drive
Agoura Hills, CA 91301

Plaintiff,

     against

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,
20 Massachusetts Ave NW,
Washington DC 20529

Defendant.

Case No.:

COMPLAINT

## COMPLAINT

### BACKGROUND

1. This case involves review under the Administrative Procedure Act  of a decision of

the United States Citizenship and Immigration Services (USCIS)  denying  a petition

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

by a U.S. employer  (Axtria, Inc.)  to classify the plaintiff, Kavya Nagaraj, as an H-1B nonimmigrant so that it might employ her on a temporary basis in a "specialty occupation" pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(B).

2.  § 1101(a)(15)(H)(i)(B) provides that:

The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—
(H) an alien (i) … (b) subject to section 212(j)(2) [8 USCS § 1182(j)(2)] who is coming temporarily to the United States to perform services … in a specialty occupation described in section 214(i)(1) [8 USCS § 1184(i)(1)] …, who meets the requirements for the occupation specified in section 214(i)(2) [8 USCS § 1184(i)(2)] … and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 212(n)(1) [8 USCS § 1182(n)(1)], …

3.  8 USCS § 1184(i)(1) defines "specialty occupation" as:

... an occupation that requires--

(A) theoretical and practical application of a body of highly specialized knowledge, and

(B) attainment of a bachelor's or higher degree in the specific specialty ( or its equivalent) as a minimum for entry into the occupation in the United States.

3.  "Specialty occupation" is defined at Title 8 Code of Federal Regulations (8 CFR), section 214.2(h)(4)(ii) as:

... an occupation which requires theoretical and practical application of a body of highly specialized knowledge in such fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business  specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

| COMPLAINT | Michael E Piston (P34568) Attorney for the Plaintiff 225 Broadway, Ste 307 New York, NY 10007 646-845-9895 michaelpiston4@gmail.com |
|---|---|

4. Title 8 Code of Federal Regulations, section 214.2(h)(4)(iii)(A) requires a specialty occupation to meet one of the following criteria:

(1) A baccalaureate  or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

( 4) The nature of the specific duties is so specialized and complex that know ledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

5. The key issue in this case  is whether the USCIS's determination that the job of

operations research analyst (a/k/a Associate - Business Operation Analytics)

in which Axtria wishes to continue to employ Ms. Nagaraj meets the definition of a

"specialty occupation" as set forth in 8 U. S. C. §1184(i) and its implementing

regulations.

6. As will be seen, the decision denying Axtria's petition to classify Ms. Nagaraj as an H-

1B nonimmigrant was not in accordance with law, in that it was premised upon the legal

fallacy that a job does not qualify as a specialty occupation unless it requires a single

educational credential; is arbitrary and capricious because its claim that the Occupational

Outlook Handbook does not indicate that a baccalaureate degree in a specific field of

study is the minimum educational requirement for an Operations  Research Analyst, is

false; and its conclusion that a particular position does not normally require a

baccalaureate or higher degree, or its equivalent, in a specific specialty, merely because

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

1   one may  qualify to occupy it with a bachelor's or higher degree or its equivalent in a

2   specific major, or in a related field or subject, without explanation of the nearly 2,000

3   Administrative Appeals Office decisions to the contrary, is an abuse of discretion.

4

5   7.  Accordingly, the decision should be held unlawful and set aside. 5 U.S.C. § 706(2).

6

7

8                        **STATEMENT OF UNDISPUTED FACTS**[1].

9   8.  Axtria is a Big Data and Analytics company which combines industry knowledge,

10      analytics and technology to deliver solutions that help its clients make better data driven

11      decisions.

12  9.  Axtria partners deeply with clients to accelerate profitable growth by building capabilities

13      and a culture of data-driven decision making. Axtria serves clients with a strong onshore

14      presence, and has built a global delivery model that is committed to delivering high

15      quality, high-impact solutions for its clients and to building a world-class firm with

16      enduring value with efficient execution, innovation and virtualization.

17

18  10. Axtria engages with innovative solution design, and its "everything-as-a- service"

19      approach adapts to its clients' changing business needs - turning services on/off, scaling

20      resources to support product launches, etc.

21

22

23  _____
    [1] All of the facts referenced in the complaint were filed with, or by, the USCIS in
24  this matter and so should be in the administrative record. The proceeding before
    the agency did not involve any factual disputes.
25

26

27  | COMPLAINT | Michael E Piston (P34568) |
    |---|---|
    |  | Attorney for the Plaintiff |
28  |  | 225 Broadway, Ste 307 |
    |  | New York, NY 10007 |
    |  | 646-845-9895 |
    |  | michaelpiston4@gmail.com |

11. Established in New Jersey in 2009, Axtria currently employs almost 180 employees and has annual revenue of about $38.5 Million. Exhibit 2 at 18.

12. On April 11, 2017, Axtria, Inc. filed a Form I-129 upon Kavya Nagaraj's behalf seeking to classify her as an H-1B nonimmigrant to be employed by it as an Associate- Business Operations Analytics.  Exhibit 1 at 1.

13. Axtria's petition indicated that the duties of Ms. Nagaraj's position would be a follows:

**Understand the client's business requirement - 10%**
• Understand the client's requirement and assist in presenting a solution.
• Evaluate results of experimentally designed tests, and communicate test learning to clients
• Responsible for Knowledge transfer and arriving at SLAs for steady state
• Manage communication and client expectations through for each initiative/project;
**2. Analytics Solution Delivery -** 75%
• Manage concurrent projects ensuring exceptional client satisfaction and on-time delivery
• Work on projects with peers and senior colleagues to deliver existing analytics solutions for clients.
• Application of advanced statistical, econometric and optimization models and algorithms to real-
world business problems
• Apply sound data management practices to ensure data consistency, quality and ease of access
• Develop new statistical models as well as provide analysis using existing models
• Responsible for delivery of assigned module components phases of a project.
• Responsible for Status reporting

3. Axtria's Capabilities Development. - 15%

• Develop and maintain skills to the highest standards to identify best practices and emerging trends in  analytics, both within and outside the domain.


Exhibit 2 at 18-19

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

14. Following a USCIS request for further evidence that the job requires a specialized degree, Exhibit 5,[2] Axtria provided it with an over 5 page statement explaining in detail, course by course, how the skills Ms. Nagaraj learned in her Master's degree program in Business Analytics and Bachelor's degree in Engineering were necessary to successfully perform the duties of the position. Exhibit 6 at 232-237.

15. This response also included, in response to USCIS's request, a substantially more detailed description of the duties of the offered position, as follows:

**1. Understand the client's business requirement - 10%**
1.1 Understand the client's requirements and assist in presenting a solution.
1.2 Manage communication and client expectations through each initiative/project;
**2. Analytics Solution Delivery - 75%**
2.1 Manage concurrent projects ensuring exceptional client satisfaction and on-time *delivery*
2.1.1 Utilize brand knowledge and current market information to understand business problems and build a strategy approach to solve and deliver insights to the client
2.1.2 For example, analyze sales data for brand to determine the cause of growth or decline in sales and present insights to client so timely action can be taken
2.1.3
2.2 Work on projects with peers and senior colleagues to deliver existing analytics solutions for clients.
2.2.1 Work with other associates and managers to discuss and validate the approach to solve problems. For example, determine the right data sources that will help solve the existing problem
2.2.2 Apply business rules on large data sets and convert the data into a usable format. Work on data processing using programming tools such as R, SAS and Python to clean and transform data into a usable format
2.2.3 Build dashboards and reports using tools such as Tableau to present the analysis visually for clients
2.3 Application of advanced statistical. econometric and optimization models and algorithms to real-world business problems
2.3.1 Conduct statistical hypothesis tests to validate if results/insights are applicable for a larger sample size
2.3.2 Apply Forecasting techniques to predict future sales based on historical data and market conditions/factors
2.3.3 For example, build a sales prediction model based on historical sales, promotional activities, current market conditions, time series etc.

---

[2] The USCIS first issued a request for evidence, Exhibit 3, which raised questions which are not pertinent to the outcome of this decision.

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

2.3.4 Evaluate results of experimentally designed tests, and communicate test learning to clients

2.4 Conduct statistical tests by coding in SAS. R. Python and other programming languages to analyze data and validate results

2.4.1 Code in SAS to run Kaplan-Meier statistical algorithm to test data to calculate persistency for patients over a period of time during the treatment journey

2.4.2 Run Chi-sq. tests for small sample sizes to check if the hypotheses are valid while comparing performance of two or more products

2.5 Create Predictive Models to determine market share for products and rank customers based on sales frequency

2.5.1 Use business rules to clean sales data at a physician level, use standardization and normalization techniques to make data suitable for creating models

2.5.2 Develop K-Means Clustering Model to segments customers into high risk, medium risk and low risk tiers

2.6 Apply sound data management practices to ensure data consistency, quality and ease of access

2.6.1Using SQL to write queries to use and store data on Hadoop, Redshift environment

2.6.2 Use best practices to store data in company assigned servers

2.6.3 Maintain confidentiality when data is not public

2.6.4 Validate data sent by vendors and highlight any discrepancies in the data

2.7 Manage Client Raw Data and Manage Data Transformations on SAP Warehouse

2.7.1 Apply SAP transformation techniques to convert online transactional data into analysis-ready format

2.7.2 Apply efficient key transformations such as multiplication and factorization to roll up the data at the required level to reduce storage space

2.8 Build Forecast Models for Quarterly planning and long range planning using EXCEL

2.8.1 Use EXCEL Macros and EXCEL Solver to build Forecast models to help client estimate ROI and plan for future forecasting

2.9 Responsible for delivery of assigned module/ components /phases of a project.

2.9.1 Responsible for analyzing sales and growth of a brand product

2.9.2 Assist clients during business review meetings such as quarterly business review, long term planning for brand etc.

2.9.3 Develop processes and templates to work on regular deliverables and provide timely updates to the client

**3. Axtria's Capabilities Development. - 15%**

3.1 Develop and maintain skills to the highest standards to identify best practices and emerging: trends in analytics. both within and outside the domain.

3.1.1 Engaged in PMSA (Pharma Management Science Association) activities to gather new techniques used in the industry to determine efficient ways to solve problems

3.1.2 Deliver presentations to team on how product sales/growth is impacted by external market conditions and change in policies

3.1.3 Train junior team members on coding skills such SAS, R

16. Nevertheless, on March 30, 2018 the USCIS issued a decision denying this petition, in

which it indicated that:

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
| --- | --- |

1
2
3
4

> USCIS routinely consults the Department of Labor's Occupational Outlook
> Handbook (OOH) for information about the duties and educational requirements
> of particular occupations. The duties described in the record are comparable to
> the duties of an Operations Research Analyst. The OOH states the following
> regarding training and educational requirements for Operations Research
> Analysts positions:

5
6
7

> Although the typical educational requirement for entry-level positions is a
> bachelor's degree, some employers may prefer to hire applicants with a master's
> degree. Because few schools offer bachelor's and advanced degree programs in
> operations research, analysts typically have degrees in other related fields.

8

Exhibit 1 at 3-4

9

17. However, the Decision omitted the following language from the OOH pertaining to the

10

educational requirements of becoming an operations research analyst:

11
12
13
14
15

> Because operations research is based on quantitative analysis, students need
> extensive coursework in mathematics. Courses include statistics, calculus, and
> linear algebra. Coursework in computer science is important because analysts rely
> on advanced statistical and database software to analyze and model data. Courses
> in other areas, such as engineering, economics, and political science, are useful
> because operations research is a multidisciplinary field with a wide variety of
> applications.

16
17

Occupational Outlook Handbook ("Operation Research Analysts/How to Become an
Operation Research Analyst"). https://www.bls.gov/ooh/math/operations-research-
analysts.htm#tab-4 (emphasis added).

18

19

18. Having ignored this key language, the Decision concluded that:

20
21
22

> The OOH does not indicate that a baccalaureate degree in a specific field of study is the
> minimum educational requirement for an Operations Research Analyst... Accordingly, a
> range of educational credentials, may qualify an individual to perform the duties of an
> Operations Research Analyst.
> Therefore, the evidence of record does not satisfy the criterion at 8 CFR

23
24

> 214.2(h)(4)(iii)(A)(l): that a baccalaureate or higher degree, or its equivalent, in a
> specific specialty, is normally the minimum requirement for entry into the particular
> position.

25

Exhibit 1 at 4.

26
27
28

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

19. Accordingly, the Decision denied Axtria's petition to classify Ms. Nagaraj as a nonimmigrant under 8 U.S.C. § 1101(a)(15)(H)(i)(B) and to change her nonimmigrant status to H-1B.

## THE COURT HAS SUBJECT JURISDICTION OVER THIS MATTER.

20. Being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et. seq.,* and the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

## THE PLAINTIFF HAS STANDING TO BRING THIS ACTION

21. As the D.C. Circuit Court of Appeals said in finding that the beneficiary of a labor certification filed by a potential employer had standing to seek judicial review under the Administrative Procedure Act (APA) of its denial, even though the prospective employer was not a party to the action:

neither the statute's text, structure, nor legislative history supplies the requisite "clear and convincing evidence" of a preclusive purpose. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *see also Shook v. District of Columbia Fin. Responsibility & Management Assistance Auth.*, 328 U.S. App. D.C. 74, 132 F.3d 775, 778-79 (D.C. Cir. 1998). Unlike in *Block v. Community Nutrition Inst.*, 467 U.S. 340, 348, 81 L. Ed. 2d 270, 104 S. Ct. 2450 (1984),  for example, where the statute itself set forth a regulatory regime that omitted mention of certain parties, giving rise to an inference that those parties were precluded from litigating in court, *see Block*, 467 U.S. at 349, there is no indication here that Congress itself considered the mechanism by which the Secretary of Labor would make labor certification decisions, or how (and at the request of whom) such decisions would be reviewable in the federal courts. And while the legislative history indicates that Congress intended to restrict further the admission of alien workers when it amended the statute in 1965, *see* S. REP. No. 748, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S. CODE CONG. & ADMIN. NEWS 3328, 3333, that does not speak to the

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

question whether the class of aliens deserving of admission under the statute have standing to challenge in court the Secretary's decision to the contrary. The regulatory regime is completely a creation of the Labor Department's regulations, and under the Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude otherwise available judicial review. *See* 5 U.S.C. § 701(a)(1); *Gladysz*, 595 F. Supp. at 53-54. In light of the presumption of judicial review, *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986), we cannot conclude (despite our suspicions) that Congress intended to preclude the alien from challenging labor certification denials without the alien's employer. *See Block*, 467 U.S. at 351 (holding that, where substantial doubt about congressional intent exists, the general presumption favoring judicial review is controlling).

*Ramirez v. Reich*, 156 F.3d 1273, 1276 (1998)

22. Here likewise neither the INA's text, structure nor legislative history supplies the requisite "clear and convincing purpose" of an intent to preclude the beneficiary of a nonimmigrant visa petition from seeking judicial review of a denial.

23.     Accordingly,   here as in *Ramirez*, there is no basis for concluding that Congress intended to preclude the beneficiary of  an application for immigration benefits filed by her prospective employer  from seeking judicial review of a denial of the same without said employer.

24.     Therefore the plaintiff has standing to bring this action even without her prospective employer as a party.

## PLAINTIFF HAS NO ADMINISTRATIVE REMEDIES TO EXHAUST

25. The beneficiary has no right to administratively appeal USCIS's denial of her employer's petition to classify her as an H-1B nonimmigrant, 8 C.F.R. §214.2(h)(10)(ii)(2018), nor the

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

denial of her application for extension of stay. *Id.* Therefore she cannot be said to have

failed to exhaust her administrative remedies, because she has none.

## THE DECISION IS UNLAWFUL AND SHOULD BE SET ASIDE

26. 5 U.S.C. § 706 provides in material part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> …
> **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—
> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

27. Inasmuch as the instant decision was not in accordance with law, and/or arbitrary,

capricious and/or an abuse of discretion, this Court should find it unlawful and set is

aside.

## COUNT I

**THE DECISION IS NOT IN ACCORDANCE WITH LAW BECAUSE IT IS PREMISED ON THE ERRONEOUS CONCLUSION THAT ONLY JOBS WHICH REQUIRE A DEGREE IN A SINGLE EDUCATIONAL CREDENTIAL QUALIFY AS SPECIALITY OCCUPATIONS**

28. Nothing in the Immigration and Nationality Act or its regulations provides that the term

"specific specialty" necessarily means  a  single "educational credential"  and in fact at

least two district court decisions have expressly rejected this idea. See *Tapis Int'l v. INS*,

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

94 F. Supp. 2d 172 (D. Mass. 2000) and *Residential Fin. Corp. v. United States Citizenship & Immigration Servs*., 839 F. Supp. 2d 985 (S.D. Ohio 2012).

29. Here the USCIS has made exactly the same mistake the defendants were admonished for in *Tapis Int'l* and *Residential Fin.*, that is effectively replacing the phrase "specific specialty (or its equivalent)" in the statutory definition of "specialty occupation" with "single educational credential".

30. The USCIS's Decision held in relevant part that:

Although the typical educational requirement for entry-level positions is a bachelor's degree, some employers may prefer to hire applicants with a master's degree. Because few schools offer bachelor's and advanced degree programs in operations research, analysts typically have degrees in other related fields.
The OOH does not indicate that a baccalaureate degree in a specific field of study is the minimum educational requirement for an Operations Research Analyst
Accordingly, a range of educational credentials, may qualify an individual to perform the duties of an Operations Research Analyst.

…

Therefore, the evidence of record does not satisfy the criterion at 8 CFR 214.2(h)(4)(iii)(A)(l): that a baccalaureate or higher degree, or its equivalent, in a specific specialty, is normally the minimum requirement for entry into the particular position.

Exhibit 1 at 4.

31. Inasmuch as the USCIS's decision is premised upon the legal fallacy that a job cannot qualify as specialty occupation under 8 CFR 214.2(h)(4)(iii)(A)(I) merely if it requires "a range" (that is, more than one) educational credential, it is not in accordance with law.

COUNT II

**THE FINDING THAT A BACCALAUREATE OR HIGHER DEGREE, OR ITS EQUIVALENT, IN A SPECIFIC SPECIALTY, IS NOT NORMALLY THE MINIMUM REQUIREMENT FOR ENTRY INTO THE OFFERED POSITION IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND SO IS ARBITRARY AND CAPRICIOUS.**

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

32. Not only did the agency misinterpret the legal standard for determining whether an Operational Research Analyst is a specialty occupation, it compounded its error by omitting from its summary of the Occupational Outlook Handbook's discussion of the qualifications needed to be an operations research analyst, the following critical language, showing that in fact this position not only requires a degree, but that an operations research analyst's studies must be in the field of quantitative analysis, regardless of the nominal educational credential:

> Although some schools offer bachelor's and advanced degree programs in operations research, some analysts have degrees in other technical or quantitative fields, such as engineering, computer science, analytics, or mathematics.
>
> *Because operations research is based on quantitative analysis*, students need extensive coursework in mathematics. Courses include statistics, calculus, and linear algebra. Coursework in computer science is important because analysts rely on advanced statistical and database software to analyze and model data. Courses in other areas, such as engineering, economics, and political science, are useful because operations research is a multidisciplinary field with a wide variety of applications. (emphasis added)

Occupational Outlook Handbook ("Operation Research Analysts/How to Become an Operation Research Analyst"). https://www.bls.gov/ooh/math/operations-research-analysts.htm#tab-4 (emphasis added).

33. Accordingly, contrary to the agency's assertion that "The OOH does not indicate that a baccalaureate degree in a specific field of study is the minimum educational requirement for an Operations Research Analyst", Exhibit 1 at 4, the what the OOH *actually* says is

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

that the specialty required for the occupation is quantitative analysis[3], a specialty which

may be studied in a degree program in operations research, or other technical or

quantitative fields, such as engineering, computer science, analytics, or mathematics, so

long as the studies include extensive coursework in mathematics, including statistics,

calculus, and linear algebra, as well as computer science.[4]

34. Therefore  the claim that the OOH does not indicate that a baccalaureate degree in a

specific field of study is the minimum educational requirement for an Operations

Research Analyst, upon which the decision in this matter was based in material part, is

---

[3] One cannot serious dispute that quantitative analysis is a "specialty".  See, e.g., the of Warrington College of Business's website, wherein it brags that "The Heavener School ranked **18th** among U.S. public undergraduate business schools in U.S. News & World Report's "Best Colleges 2016." It also placed in the top 12 in five popular specialty programs: **...** **6th** Quantitative Analysis. https://warrington.ufl.edu/undergraduate-academics/. This also shows that Quantitative Analysis itself can be an academic major although, like operations research, apparently one not offered by many schools.

[4] The USCIS made no attempt to determine whether the beneficiary's degrees in analytics and engineering, both expressly identified by the OOH as degrees related to operations research, satisfied the requirements of the quantitative analysis specialty upon which operations research is based, even though the transcripts she submitted showed extensive mathematics course including courses in statistic, calculus and linear algebra (referred to as linear equations) and computer science. Exhibit 2 at 28-32, 4 at 237.

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

not supported by substantial evidence, the decision is arbitrary and capricious.

*Association of Data Processing Serv. Orgs. v. Board of Governors*, 240 U.S. App. D.C. 301, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J)(.Where an agency's factual findings are unsupported by substantial evidence then the decision based upon them is arbitrary and capricious).

## COUNT III

**THE DECISION IS AN ABUSE OF DISCRETION IN THAT IT PROVIDES NO EXPLANATION FOR ITS FAILURE TO FOLLOW THE USCIS'S NUMEROUS DECISIONS HOLDING THAT  AN OCCUPATION WHICH NORMALLY REQUIRES A BACHELOR'S OR HIGHER DEGREE IN A SPECIFIC FIELD OR IN A RELATED SUBJECT QUALIFIES AS A SPECIALTY OCCUPATION.**

35. The OOH provides that: "Because few schools offer bachelor's and advanced degree programs in operations research, analysts typically have degrees in other *related* fields. Occupational Outlook Handbook" ('Operations Research Analysts'/How to Become an Operations Research Analyst') https://www.bls.gov/ooh/math/operations-research-analysts.htm#tab-4

36. "Typically" is synonymous with "normally".[5]

37.  Therefore, unless the USCIS simply did not read the quoted language, when it decided that  "the evidence of record does not satisfy the criterion at 8 CFR 214.2(h)(4)(iii)(A)(l): that a baccalaureate or higher degree, or its equivalent, in a specific specialty, is normally

---

[5] Dictionary.com, http://dictionary.reference,com/browse/typical (accessed: June 29, 2012).

| | |
|---|---|
| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |

the minimum requirement for entry into the particular position", it must necessarily have found that the fact that a job required a degree in a particular major, or a related one, was insufficient to establish that it normally required a degree in a specialty.

38.     However, it is well established that a specialty occupation is one which normally requires a degree in a specific major or a "related" subject. *See Next Generation Tech., Inc. v. Johnson*, No. 15 cv 5663 (DF), 2017 U.S. Dist. LEXIS 165531, at *30-31 (S.D.N.Y. Sep. 29, 2017); *Button Depot, Inc. v. United States Dep't of Homeland Sec.*, 386 F. Supp. 2d 1140, 1145-46 (C.D. Cal. 2005).

39.     In fact, the USCIS's Administrative Appeals Office has stated in at least 1,468 different unpublished decisions, that "USCIS regularly approves H-1B petitions for qualified aliens who are to be employed as engineers, computer scientists, certified public accountants, college professors, and other such occupations." E.g. (Identifying Information Redacted By Agency) 2012 WL 4713226 (AAO February 08, 2012).[6]

40.     However, the Occupational Outlook Handbook provides that "Most accountant and auditor positions require at least a bachelor's degree in accounting or a related field." (emphasis added).

41.     The OOH also states that "Most jobs for computer and information research

---

[6] This number was derived by searching for this exact phrase in Lexis's "Immigration Non-Precedent Decisions: BIA, AAO/AAU" library. This search indicated that its database contained 1,468 decisions with this phrase. See Exhibit 7.

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

scientists require a master's degree in computer science or a related field."[7] Accordingly, the AAO has opined at least 1,468 times that a specialty occupation is one which normally requires a degree in a particular field or a related field (or subject)[8].

42.      "It is a settled tenet of administrative law that an agency cannot depart from a long-standing policy without providing sufficient explanation of its rationale for altering course. *See Simmons v. ICC*, 264 U.S. App. D.C. 365, 829 F.2d 150, 156 (D.C. Cir. 1987); *Telecommunications Research & Action Ctr. v. FCC*, 255 U.S. App. D.C. 156, 800 F.2d [**31] 1181, 1184 (D.C. Cir. 1986)." *DSE, Inc. v. United States*, 335 U.S. App. D.C. 105, 169 F.3d 21, 31 (1999). Likewise "a pattern of visa grants of sufficient magnitude could oblige the agency to provide a reasoned explanation for treating similar situations differently." *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 69 F.3d 1127, 1144 (D.C. Cir. 2014); *see also ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995).

43.      Even the fact that the visa petition adjudications are all non-precedential need not matter for purposes of application of the general requirement that an agency give "reasoned explanation for treating similar situations differently." *See, e.g., Davila-Bardales v. I.N.S.*, 27 F.3d 1, 5 (1st Cir. 1994); *see also Sang Goo Park v. Attorney Gen.*,

---

[7] https://www.bls.gov/ooh/computer-and-information-technology/computer-and-information-research-scientists.htm#tab-4

[8] It appears that the terms "field" and "subject" are used interchangeably in the OOH and by the USCIS.

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|

846 F.3d 645, 654 (3d Cir. 2017) ("[T]she BIA's nonprecedential opinions have value in determining the agency's policies and practices[.]"); *De Leon v. Holder*, 761 F.3d 336, 344 (4th Cir. 2014) ("The BIA has adhered to this approach in a number of unpublished decisions affirmed by courts of appeals."). As the *Davila-Bardales* court explained, "the prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation," raises various arbitrariness concerns, and the agency should not then be permitted to "take refuge" behind its own past (mis)characterizations of which adjudications may constitute precedent. *Id.* ("[W]e see no earthly reason why the mere fact of nonpublication should permit an agency to take a view of the law in one case that is flatly contrary to the view it set out in earlier … cases.").

44.  Here the agency  has provided no explanation for deviating from its long-standing policy, as set forth in at least 1,468 Administrative Appeals Office decisions, and openly admitted by it in at least one U.S. district court decision, *Button Depot, Inc. v. United States Dep't of Homeland Sec.*, 386 F. Supp. 2d 1140, 1143 (C.D. Cal. 2005), that a job which requires  a degree in a particular major or a related field or subject, is a specialty occupation.

45.     Therefore the finding that a particular position does not normally require a baccalaureate or higher degree, or its equivalent, in a specific specialty, merely because one may  qualify to occupy it with a bachelor's or higher degree or its equivalent in a specific major, or in a related field or subject, without explanation of the voluminous

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
| --- | --- |

USCIS decisions to the contrary, is an abuse of discretion.

46.     Further, three other H-1B petitions filed by Axtria in the same week as the instant one, seeking the classification of operations research analysts as H-1B nonimmigrants, were approved by the USCIS. See Exhibits 8-10.

47.     Therefore the finding that the job of operations research analyst is not a specialty occupation, without explanation of the 3 virtually concurrent  USCIS decisions to the contrary, is also an abuse of discretion.


**CONCLUSION**

Inasmuch as the decision in this matter is arbitrary and capricious, an abuse of discretion, and not in accordance with law, it should be held unlawful and set aside.


Respectfully Submitted

s/ *Michael E. Piston*
Michael E. Piston   (MI 002)
Attorney for the Plaintiff
Dated: 8/23/2018

**EXHIBIT LIST**

1. Decision of March 30, 2018
2. Axtria's I-129 upon behalf of Kavya Nagaraj
3. USCIS's request for evidence (RFE)
4. RFE response
5. USCIS's RFE
6. Second RFE response
7. Result of Lexis search
8. Approved H-1B petition for Navin Kumar
9. Approved H-1B petition for Charith Acharya
10. Approved H-1B petition for Shikha Kanwar

| COMPLAINT | Michael E Piston (P34568)<br>Attorney for the Plaintiff<br>225 Broadway, Ste 307<br>New York, NY 10007<br>646-845-9895<br>michaelpiston4@gmail.com |
|---|---|